In the Matter of UNIVERSAL FOUND-RY COMPANY, Debtor.

Paul G. SWANSON, Successor Trustee of Universal Foundry Company, Plaintiff,

v.

FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE and First Wisconsin Financial Corporation, Defendant.

Bankruptcy No. 84–03552.
Adv. No. 86–0490.

United States Bankruptcy Court, E.D. Wisconsin.

June 24, 1988.

E. Campion Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiff.

Mark L. Metz, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, s.c., Milwaukee, Wis., for defendants.

C.N. CLEVERT, Chief Judge.

First Wisconsin National Bank of Milwaukee and First Wisconsin Financial Corporation, the defendants in the above-captioned case, have asked the court to dismiss the third cause of action in the trustee's Third Amended Adversary Complaint, pursuant to Federal Rule of Civil Procedure 9(b) and Bankruptcy Rule 7009. Alternatively, the defendants seek entry of an order directing the plaintiff to file a more definite statement of his third cause of action, pursuant to Rule 12(e) F.R.Civ.P. and Bankruptcy Rule 7012.

The third cause of action in the trustee's Third Amended Adversary complaint alleges the following:

17. The allegations of paragraphs 11, 12 and 13 are incorporated by reference here.[1]

---

1. The paragraphs referred to state:

11. At all relevant times the defendants were "insiders" within the meaning of 11

18. This cause of action arises under 11 U.S.C. § 510(c).

19. Continuously from some time in 1982 to the date the original petition herein was filed, the defendants, separately and acting in concert or as agents for one another, engaged in inequitable conduct. This conduct included (a) providing false and misleading information and failed to provide correct material information to suppliers of goods and services which resulted in the improvident extension of credit and services and which enhanced the position of the defendants at the expense of the creditors; and (b) breaking repeated promises to finance the debtor's operations upon which other creditors and the employees of the debtor relied to their detriment.

20. Upon information and belief, the false and misleading information was disseminated by the defendants to and the material omissions referred to in the preceding paragraph were withheld from substantially all suppliers of goods, materials and services to Universal beginning sometime before September 30, 1982 and continuously thereafter until the filing of Universal's Chapter 11 petition. The false and misleading information and material omissions included, without being limited to, the following:

(a) Representing that Universal maintained substantially higher deposit balances at the First Wisconsin than it actually maintained;

(b) Substantially understating the size of Universal's outstanding loans from the defendants;

(c) Stating that such loans were secured when in fact they were substantially undersecured and in some respects unsecured;

(d) Representing that the loans were guaranteed, without disclosing that the guarantee was by Universal's parent company, the only asset of which was the stock of Universal itself, so that the guarantee offered no additional security;

(e) Failing to disclose that from at least sometime in 1982 and continuously thereafter Universal was insolvent; and

(f) Manipulating the financial affairs of the corporation, including selective payments to certain creditors, to create the false appearance of solvency.

The dissemination of the foregoing false and misleading information and the material omissions were continuous and pervasive on the part of the defendants from sometime in 1981 until Universal's Chapter 11 petition was filed.

21. In late 1981 and into mid 1982 the Bank induced the management of Universal to obtain wage concessions from the company's union employees, whereby 10% of wages would be deferred at 12% interest. Management obtained this concession based upon assurances by the Bank that it would not allow Universal to go into bankruptcy. Based on this the union also abandoned its insistence that wage claims have a higher priority than those of the Bank in the event of bankruptcy. Both the union and Universal relied upon these assurances by the Bank to their detriment. Further, based upon repeated representations by the Bank similar to those referred to earlier in this paragraph, the Bank obtained an additional 16% wage give-up by Universal employees in late 1982.

22. The defendants exercised domination over and control of the debtor. They were insiders and fiduciaries as to the debtor and its creditors.

23. Equitable subordination of the defendants' claims would not be inconsistent with the provisions and purposes of the Bankruptcy Act.

These allegations followed the court's order of May 2, 1988, granting defendants'

U.S.C., section 547(b)(4)(B).

12. Between ninety days and one year before the date of the filing of the Chapter 11 petition, the defendants transferred property in which the debtor had an interest to themselves in payment of said antecedent debts.

13. During all or a substantial portion of the time period referred to in the preceding paragraph and at the times said transfers were made the debtor was insolvent.

motion for a more definite statement to the third cause of action in plaintiff's second amended complaint filed January 19, 1988. In that complaint the third cause of action read:

17. The allegations of paragraphs 11, 12 and 13 are incorporated by reference here.[2]

18. This cause of action arises under 11 U.S.C. § 510(c).

19. Continuously from some time in 1982 to the date the original petition herein was filed, the defendants, separately and acting in concert or as agents for one another, engaged in inequitable conduct. This conduct included (a) providing false and misleading information to suppliers of goods and services which resulted in the improvident extension of credit and services and which enhanced the position of the defendants at the expense of the creditors; and (b) breaking repeated promises to finance the debtor's operations upon which other creditors and the employees of the debtor relied to their detriment.

20. The defendants exercised domination over and control of the debtor. They were insiders and fiduciaries as to the debtor and its creditors.

21. Equitable subordination of the defendants' claims would not be inconsistent with the provisions and purposes of the Bankruptcy Act.

■ A review of the second and third amended complaints indicates that the trustee is alleging inequitable conduct encompassing fraud by the defendants. Such being the case, the trustee is required to plead the following elements of fraud: 1) a false representation or omission, 2) in reference to a material fact, 3) made with knowledge of its falsity, 4) made or withheld with intent to deceive, and 5) reliance upon the representation or omission. 2A J. Moore, J. Lucas & G. Gother, Jr., Moore's Federal Practice ¶ 9.03[1] (2d ed. 1987) (hereinafter Moore's). However, nowhere in either complaint are there any allegations that the defendants engaged in intentional conduct. While this alone is sufficient cause to grant the defendants' motion to dismiss, there are additional bases upon which the motion may be granted.

■ In order to plead fraud with particularity as required by Rule 9(b), the plaintiff usually must plead the time, place and content of the misrepresentation or omission relied upon, the identity of the perpetrator, and what was obtained or given up. Id. Also if, as here, there are multiple defendants the plaintiff should particularize and give a detailed description of each defendant's involvement. Id. at ¶ 9.03[3]. If a fraudulent conspiracy is alleged, the plaintiff should plead the facts on which it is based. National Egg Co. v. Bank Leumi le-Israel, B.M., 504 F.Supp. 305 (N.D.GA 1980).

Fraud complaints based upon information and belief are generally insufficient for purposes of Rule 9(b). 2A Moore's at ¶ 9.03[1]. The standard is relaxed if matters are peculiarly within the knowledge of the defendant, if matters cover a long time period, or if the fraud is perpetrated on third parties. But in such cases the plaintiff must provide a statement of facts upon which the belief is based. Id.

Using the foregoing as a benchmark, it is evident that the third cause of action in the Third Amended Adversary Complaint is deficient. With the possible exception of paragraph 21, which refers to "the Bank" rather than "the defendants",[3] the complaint fails to particularize or give a detailed description of each defendant's involvement; it fails to state the factual basis for believing there was a fraudulent conspiracy; it fails to identify the persons presenting or relying on any misrepresentation or omission; and it fails to indicate whether the misrepresentations or omissions were communicated orally or in writing. Furthermore, two different time frames are used in discussing the period

2. The allegations referred to are identical to those quoted in fn. 1, supra.

3. Since this is the sole reference to a particular defendant, it is unclear whether it was intentional or an inadvertent aggregate reference to these related entities as "the Bank."

when the fraudulent conspiracy was in operation.[4]

One of the allegations of the third cause of action is based upon information and belief. Proper pleading requires a factual statement supporting the belief, yet none is given. The complaint also fails to allege the manner and extent to which the defendants have "enhanced" their positions as a result of their fraudulent conduct. Thus, these deficiencies require that the third cause of action of the Third Amended Adversary Complaint be dismissed.

 The trustee cites *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986), for the proposition that a plaintiff should have more than one opportunity to amend a complaint which does not satisfy the pleading requirements of Rule 9(b). However, the trustee's reading of that case is not entirely accurate.[5] Moreover, he neglected to point out that that case recognizes that allegations of fraud similar to those in this case were deficient and lacking in the "particulars" required by Rule 9(b).

The court is cognizant that this adversary proceeding was commenced on September 4, 1986, and that in accordance with Bankruptcy Rule 9011,[6] the trustee's attorney certified that he investigated the facts and circumstances surrounding the defendants' dealings with the debtor, the debtor's employees and the debtor's creditors. Moreover, the court believes the trustee has conceded that partial, if not complete, discovery was done with respect to the third cause of action. Thus, it stands to reason that the trustee had substantial knowledge of relevant matters which he failed to plead despite this court's order requiring him to file a more definite statement. Defendants' motion to dismiss the third cause of action is, therefore, granted and the trustee is denied leave to further amend his complaint.

---

**4.** The two time frames are indicated as: 1) from sometime in 1981 to the petition date; and 2) from sometime in 1982 to the petition date.

**5.** In that case the trial court had dismissed the initial complaint without leave to amend. Consequently, unlike the trustee's characterization, the case truly stands for the proposition that it is an abuse of discretion not to give a plaintiff one opportunity to remedy deficiencies under Rule 9(b). 802 F.2d at 57. The court also noted that "[i]n cases where [leave to amend] has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity, or the defective allegations were made after full discovery in a related case." *Id.* at 56 (*citations omitted*).

**6.** Bankruptcy Rule 9011 states, in part that:
[t]he signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.
*See also, Brown v. Federation of State Medical Boards of the United States,* 830 F.2d 1429 (7th Cir.1987).